**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Parr, | No. CIV 13-173-TUC-LAB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).  (Doc. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties.  *See* FED.R.CIV.P. 73; (Doc. 18)

The court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error.

PROCEDURAL HISTORY

On December 7, 2009, Parr filed an application for disability insurance benefits.  (Tr. 176)  She filed an application for supplemental security income benefits on February 3, 2010.  (Tr. 180)  Parr alleged disability beginning on December 1, 2007, due to schizoaffective disorder with hallucinations; post traumatic stress disorder; and auditory, visual, and olfactory

hallucinations. (Tr. 200)  Her claim was denied initially and upon reconsideration. (Tr. 106-113)

Parr requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Larry Johnson on August 16, 2011. (Tr. 39)  In his decision, dated October 26, 2011, the ALJ found Parr was not disabled. (Tr. 22-31)  Parr appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3); *see Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Parr subsequently filed this action appealing the Commissioner's final decision. (Doc. 1)  She argues the ALJ failed to consider the severity of her physical impairments at step 2 of the disability determination; failed to correctly determine her residual functional capacity (RFC); and improperly relied on the social security grids at step 5. (Doc. 21, p. 2)

Claimant's Work History and Medical History (Mental)

Parr had a difficult childhood.  Her mother was neglectful and verbally abusive. (Tr. 432)  Her father was physically abusive toward her mother. (Tr. 432)   Her mother, brother, and sister have since been diagnosed with mental illness. (Tr. 432)

Parr lived in foster homes starting at age three. (Tr. 432)  At age five she was adopted, but she experienced abuse by her adoptive family. (Tr. 390, 431)  She was raped and stabbed at age 13 by someone outside the family, after which she received some inpatient psychiatric treatment. (Tr. 432)  She was hospitalized a second time at age 16 after a suicide attempt. (Tr. 432)

Parr attended school through the 10th grade and earned a GED. (Tr. 432)  Between January of 2001 and April of 2003, Parr worked part-time as a student work-study assistant at a community college. (Tr. 201)  After that, she worked as a hotel housekeeper, receptionist, secretary, substitute teacher, tax preparer, and telemarketer. (Tr. 201)  She did not remain very long at any of these positions because she suffered from panic attacks and hallucinations. (Tr. 41)

1  In 2009, at the age of 30, Parr was incarcerated at the Pima County Adult Detention Center having been caught pawning her roommate's jewelry. (Tr. 432) There she was diagnosed with depression and post traumatic stress disorder and prescribed Celexa, Wellbutrin, and Zoloft. (Tr. 340-41) Since that time, Parr has continued with psychiatric treatment. (Tr. 432) Her current prescriptions include Risperdal, Trazodone, Doxepin, Prazosin, Zoloft, and Lorazepam. (Tr. 432) She reports her hallucinations are quieter, her mood is more stable, she sleeps better, and her panic attacks are fewer. (Tr. 432); (Tr. 41)

The record contains treatment notes from CODAC Behavioral Health Services, Inc. and a "core assessment" conducted in December of 2009. (Tr. 381-410) Parr's diagnosis was given as schizoaffective DS, posttraumatic stress DIS, R/O schizophrenia, paranoid type. (Tr. 397)

In April of 2010, Parr was evaluated by Noelle Rohen, Ph.D., for the state disability determination service. (Tr. 430-435) Rohen gave the following diagnostic impression: "1. Schizoaffective disorder, bipolar type, 2. Posttraumatic stress disorder, chronic, with panic attacks; 3. Rule out obsessive-compulsive disorder." *Id*. She stated, "Ms. Parr presents with chronic history of hallucinations occurring regardless of mood state or severity." *Id*. "Psychiatric conditions are expected to be chronic with guarded prognosis and to impact her ability to work . . . ." *Id*. Nevertheless, she found no evidence of that Parr had problems with social interaction or limitations in the areas of concentration or persistence in spite of Parr's claims to the contrary. (Tr. 28)

In May of 2011, Psychiatric Nurse Practitioner B. Newhouse completed a Mental Residual Functional Capacity assessment. (Tr. 712-13) Newhouse rated Parr's capacity for work-related mental tasks as markedly limited in twelve out of twenty mental assessment areas. *Id*. She opined that Parr would be unable to work more than five days per month due to mental illness. *Id*.

In August of 2011, Parr appeared with counsel at a hearing before ALJ Larry Johnson. (Tr. 39) Parr explained she had trouble in the past keeping a job due to her panic attacks and hallucinations. (Tr. 41) Medication, however, is helping to reduce those symptoms. (Tr. 41)

In September of 2011, Edward Jasinski, Ph.D., examined the records and completed a

- 3 -

1  Medical Source Statement of Ability to do Work-Related Activities (Mental) evaluation form.
2  (Tr. 786-94)   Based on Rohen's evaluation, Jasinski concluded Parr is mildly impaired in her
3  "ability to make judgments on simple work-related decisions," "understand and remember
4  complex instructions," "carry out complex instructions," and "make judgments on complex
5  work-related decisions." *Id*.

7  <u>Medical History (Physical)</u>
8  The medical record contains numerous references to obesity.  In March of 2009, the
9  record indicates that Parr had gained weight due to inactivity as a result of back pain. (Tr. 621)
10 Her usual adult weight was 200 lbs., but it had been as high as 500 lbs. and was then 420 lbs.
11 *Id*.
12 In November of 2009, Parr was treated in the emergency room after she fell and knocked
13 her head against a wall.  (Doc. 496)  Parr reported pain in her back due to chronic back spasms.
14 *Id*.
15 In February of 2010, Parr was treated in the emergency room for back pain, which Parr
16 explained had existed for the past three years. (Tr. 505-7) She was diagnosed with lumbosacral
17 strain and prescribed an analgesic.  *Id*.
18 In March of 2010, Parr was admitted to hospital following two episodes of acute
19 dizziness. (Tr. 420)  CT scans were negative, however, and it was suggested that her syncope
20 could be secondary to dehydration. (Tr. 420)  Alternatively, it was suggested that her dizziness
21 could be a side effect of her medications.  (Tr. 421)   The attending doctor opined, "She
22 definitely needs adjustment of her medications."  (Tr. 421)

24 CLAIM EVALUATION
25 Social Security Administration (SSA) regulations require that disability claims be
26 evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter*
27 *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991).  The first step requires a determination of

whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Parr "has not engaged in substantial gainful activity since December 7, 2007, the alleged onset date . . . ." (Tr. 24). At step two, he found Parr "has the following severe impairments: Post traumatic stress disorder; schizoaffective disorder; morbid obesity. . . ." (Tr. 24) At step three, the ALJ found Parr's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 25)

The ALJ then analyzed Parr's residual functional capacity (RFC). He found she "has the residual functional capacity to perform the full range of work at all exertional levels but with the following nonexertional limitation[]: the claimant is limited to work performed in a non-public setting." (Tr. 26)

1   At step four, the ALJ found Parr "is unable to perform any past relevant work. . . ." (Tr.
2   30) At step five, the ALJ found Parr is not disabled using the grids. (Tr. 30)

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the ALJ are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The ALJ may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence

in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he [ALJ] must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [ALJ]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The ALJ's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Sec. Admin.,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the [ALJ]'s reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

Parr argues first that the ALJ erred by failing to make a severity finding about her sciatica and syncope at step two of the disability analysis. In the alternative, she argues the ALJ should have considered how these conditions affect her RFC.

The medical record contains references to syncope and back pain. Parr did not, however, claim in her application for disability benefits that these conditions affect her ability to work. (Tr. 200) It is possible these issues became important only after that application was submitted,

1    but she did not raise these issues at the administrative hearing either. (Tr. 37-50) In fact, at the
2    hearing, counsel explained that Parr was disabled due to a combination of her mental condition
3    and her obesity. (Tr. 39-40) He explicitly stated that "she doesn't have a formal back
4    problem." (Tr. 40) He did not suggest that her syncope episodes were disabling.

5    "[A]t least when claimants are represented by counsel, they must raise all issues and
6    evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*,
7    172 F.3d 1111, 1115 (9th Cir. 1999). The issues of sciatica and syncope were not presented to
8    the ALJ. The court will not consider them now. *See, e.g., Sanchez v. Secretary of Health and
9    Human Services,* 812 F.2d 509, 511–12 (9th Cir.1987); *Geer v. Astrue*, 2010 WL 797176, 1
10   (C.D.Cal. 2010).

11   Parr further argues the ALJ failed to properly assess her RFC. The court finds to the
12   contrary that the ALJ's assessment was supported by substantial evidence.

13   The ALJ concluded that while Parr suffers from mental impairments she retains the
14   ability to perform the full range of work at all exertional levels provided that work is performed
15   in a non-public setting. (Tr. 26) The ALJ reached his conclusion by relying on the treatment
16   record and the medical report supplied by the examining consultant Rohen. (Tr. 27)

17   As the ALJ noted, Parr enjoyed going to school despite the difficulties she had getting
18   along with people her own age. (Tr. 27, 403) Generally, however, she reported that she
19   "usually gets along well with others." (Tr. 27, 402) On a typical day "she cleaned her
20   apartment, attend[ed] any appointments, read or [got] out of the house with her roommate." (Tr.
21   27, 402)

22   Although she was assessed a GAF (global assessment of functioning) of 48, she
23   exhibited few signs of mental impairment at her CODAC core assessment. For example,
24   "examination notes indicate that the claimant exhibited a relaxed mood and her affect was
25   appropriate to her thought content." (Tr. 27, 396) She was "optimistic"; her "memory was
26   noted to be good, as was [her] judgment and impulse control." (Tr. 27, 396) Moreover, Parr
27   exhibited "appropriate social interaction" during the evaluation. (Tr. 27, 395)

28

1    In January of 2010, Parr reported that she was doing volunteer work at a thrift store. (Tr. 27, 386) "[S]he was coping well despite the stresses in her life." *Id.* "[H]er overall mood was stable and she was suffering no depression or mania and only occasional auditory hallucinations that were neither command hallucinations nor distressing in nature." (Tr. 27-28, 386)

Parr reported that her last paying job was in December of 2007. (Tr. 27, 404) She said she was let go "because of a mistake she didn't catch." *Id.* It does not appear, therefore, that Parr lost her job due to her mental impairments.

The medical record cited by the ALJ provides substantial evidence in support of his RFC. With proper medication, Parr was still experiencing occasional auditory hallucinations, but her mood was stable and she was not suffering from depression or mania. She felt optimistic and her social interaction was appropriate.

The report by the examining consultant, Rohen, provides further support for the conclusions of the ALJ. (Tr. 27) Rohen diagnosed Parr with schizoaffective disorder, bipolar type and PTSD. (Tr. 28) She found, however, no evidence of that Parr had problems with social interaction or limitations in the areas of concentration or persistence in spite of Parr's claim to the contrary. (Tr. 28) Rohen further found that Parr "appeared capable of adapting to changes in the workplace." (Tr. 28) Rohen's evaluation provides further evidence in support of the ALJ's evaluation of Parr's RFC.

The ALJ acknowledged that his RFC was not supported by the report of the psychiatric nurse practitioner, Newhouse. She rated Parr's capacity for work-related mental tasks as markedly limited in twelve out of twenty mental assessment areas. (Tr. 712-13) As the ALJ observed, however, nurse practitioners are not classified by the Social Security Administration as an "acceptable medical source" and therefore are not given the deference accorded to a physician or psychologist. *See* 20 C.F.R. 404.1513, 416.913. Nevertheless, their observations may be considered "on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Tippett v. Commissioner of Social Sec.*, 2011 WL 6014015, 7 (D.Or. 2011) (quoting SSR 06-03p, at *3). Here, the ALJ rejected Newhouse's

1 conclusions as to the severity of Parr's impairments and adopted the conclusions of the
2 examining consultant instead. He was entitled to make this decision.

3 The treatment record and the medical report supplied by the examining consultant Rohen
4 constitute substantial evidence supporting the ALJ's RFC determination. (Tr. 27)

5 Parr argues generally that the ALJ emphasized those portions of the record that support
6 his RFC and disregarded other evidence that supports her subjective testimony of disability.
7 She notes, for example, that Parr's description of her daily activities is entirely consistent with
8 a person unable to work. There is, she argues, "significant and substantive evidence supporting
9 the Plaintiff's claims." (Doc. 21, p. 18) Parr, however, overlooks this court's standard of
10 review.

11 The findings of the ALJ must be upheld unless they contain legal error or are not
12 supported by substantial evidence. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).
13 Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept
14 as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
15 preponderance." *Id.* Accordingly, whether there is evidence that supports Parr's subjective
16 testimony of disability, even a preponderance of evidence, is not the issue. The issue is whether
17 or not there is substantial evidence in the record that supports the ALJ's decision. And here
18 there is.

19 Parr further argues the ALJ erred by using the grids at step five of the disability analysis.
20 Parr argues the ALJ should have used a vocational expert who would have been able to testify
21 about how her hallucinations would affect her ability to work.

22 "The ALJ can use the grids without vocational expert testimony when a non-exertional
23 limitation is alleged because the grids provide for the evaluation of claimants asserting both
24 exertional and non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir.
25 2007) (punctuation modified). The grids are only inapplicable "when a claimant's
26 non-exertional limitations are sufficiently severe so as to significantly limit the range of work
27 permitted by the claimant's exertional limitations." *Id.*

28

- 11 -

1     Here, the ALJ found that Parr could work at any exertional level provided that work was performed in a non-public setting. The ALJ concluded this accommodation to Parr's mental impairment would not significantly erode the number of jobs available at each exertional level. (Tr. 30) His conclusion is supported by substantial evidence in the record including the medical report from the consulting medical examiner, Rohen. Accordingly, the use of the grids was appropriate. *See, e.g., Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation"); *Carter v. Astrue*, 2013 WL 754780, 6 (S.D.Cal. 2013) (The ALJ's reliance on the grids was appropriate where "plaintiff had the RFC to perform light work, limited to simple, repetitive tasks in a non-public work setting."), *adopted by Carter v. Astrue*, 2013 WL 755523 (S.D.Cal. 2013); *see also Long v. Colvin*, 2013 WL 4776553, 4 (E.D.Cal. 2013) ("Although plaintiff disputes the ALJ's finding that the occupational base would not be eroded, plaintiff has offered nothing more than a conclusory assertion of his disagreement, devoid any elaboration.").

    IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

    DATED this 29th day of May, 2014.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge